E. F. CORDIA and CLARA CORDIA, His Wife, v. STEPHEN T. RICHARDS, Sheriff of Washington County, Missouri, FRANK DIETRICH, Special Deputy Finance Commissioner in Charge of the Affairs of THE PEOPLES BANK OF DE SOTO ET AL., Appellants.—48 S. W. (2d) 878.

Division One, April 2, 1932.

*T. E. Francis, Frank L. Dietrich, R. E. Kleinschmidt* and *J. F. Evans* for appellants.

*Terry & Terry* for respondents.

GANTT, P. J.—Action to enjoin the foreclosure of two deeds of trust. One of the deeds was given by plaintiffs to secure the payment of their note of March 17, 1919, for $5,000, payable to the Peoples Bank of DeSoto six months after date. The other deed was given

by them to secure the payment of their note of October 16, 1919, for $3,000, payable to said bank twelve months after date. The suit is by E. F. Cordia and Clara Cordia, husband and wife, against Stephen T. Richards, acting trustee in the deeds of trust, Frank Dietrich, deputy finance commissioner in charge of the Peoples Bank, and E. L. Cook, Cashier of the DeSoto Trust Company, with a liquidating interest in the Peoples Bank of DeSoto. The State Finance Department took charge of the Peoples Bank in January, 1921. The pleadings are not challenged. Plaintiffs alleged payment of the notes. Defendants denied payment. The court found that the notes had been paid; that the deeds of trust should be cancelled, and that defendants should be enjoined from foreclosing the deeds of trust and collecting the notes. Judgment accordingly, and defendants appealed.

Plaintiff, E. F. Cordia, owned timber lands and conducted an extensive tie and timber business. He did business with the Peoples Bank of DeSoto, Bank of Potosi and a St. Louis bank.

On the issue of payment of the $5,000 note, Cordia testified that it was given for a temporary loan until he could negotiate a loan from the Federal Land Bank, and for that reason the deed of trust given to the Peoples Bank was not recorded. He further testified that the Federal Land Bank loaned him $5,000 which was secured by a deed of trust on the land described in the deed of trust given to secure the $5,000 note held by the Peoples Bank; that on August 5, 1919, he mailed the Peoples Bank a draft for $4771.05, the net amount of the Federal Land Bank loan; that he did so as payment on the $5,000 note; that he did not remember of mailing a letter with the draft; that in a few days he went to the Peoples Bank and paid the balance due on the $5,000 note; that he did not know said note was in existence until it was delivered to the acting trustee for foreclosure; that R. B. Jones, Cashier, was present at the time he paid said balance. The records of the Bank of Potosi showed that on August 5, 1919, it issued a draft for $4771.05.

Isaac E. Letcher, abstractor, Alex Cordia, brother of E. F. Cordia, and L. R. Standforth, lawyer, testified that they knew that E. F. Cordia obtained a loan from the Federal Land Bank secured by a deed of trust on the land described in the deed of trust, securing payment of the $5,000 note to the Peoples Bank; that at the time of the Federal Land Bank loan there was no deed of trust of record on said land; that they had no knowledge of the disposition of the proceeds of the Federal Land Bank loan and could not testify that the $5,000 note had been paid.

L. R. Standforth testified that he did not know what was done with the money paid to Cordia on the Federal Land Bank loan; that loans were usually made to pay off a previous indebtedness; that he did

not know what loan Cordia was getting the money to pay, but he knew it was to pay a loan.

Frank Lore testified that in the latter part of 1920 he was in the Peoples Bank and heard Cordia ask Jones, cashier, "for a note that was paid—for some kind of a note, but I don't know what kind it was. He said he would give it to him later. I did not know what they were talking about."

The testimony of Lore does not tend to show payment of the $5,000 note. Cordia may have asked for another note which had been paid by him. And withholding the deed of trust from the record did not aid Cordia in procuring the other loan. If said deed had been recorded, the Federal Land Bank would have used the money loaned on the land to pay the $5,000 note held by the Peoples Bank so that its deed of trust would be a first lien. This tends to show that it was not the intention of Cordia and cashier Jones to use the money loaned on the land by the Federal Land Bank to pay the $5,000 note held by the Peoples Bank. It also tends to show that Cordia and the cashier were in collusion, and that the deed was not recorded that Cordia might be able to procure another loan on the land, thereby deceiving the bank directors as to his financial condition and the condition of his indebtedness to the Peoples Bank.

The other testimony above set forth does tend to show that the Peoples Bank received the net proceeds of the Federal Land Bank loan, but it does not tend to show that same was credited on the $5,-000 note or that the Peoples Bank was directed to do so. The only evidence tending to show payment is the uncorroborated testimony of Cordia that he paid the balance due on said note and that he did not know the note was in existence until it was delivered to the acting trustee.

On the issue of payment of the $3,000 note Cordia testified that on June 25, 1920, a check was drawn on the Bank of Potosi for $3883.83 payable to the Peoples Bank; that the name of E. F. Cordia was signed to the check; that the Bank of Potosi knew the check was not signed by him and refused payment; that he called up the Peoples Bank and asked about the check and was told by someone that it was to pay the $3,000 note; that he then authorized the Bank of Potosi to pay the check; and also that he did not know this note was in existence until it was delivered to the acting trustee for foreclosure.

This testimony was evidence tending to show that the Bank of Potosi paid to the Peoples Bank a check for $3883.83. But the uncorroborated testimony of Cordia is the only evidence tending to show that said check was payment of the $3,000 note. This note was not due for four months, and Cordia does not explain why he paid the note before it was due or why he paid about $700 in excess of the principal and interest due on said note. Furthermore, the deed of

trust securing payment of this note also was not recorded. As a result Cordia procured another loan on the land from the Bank of Potosi. This also tends to show that Cordia and the cashier of the Peoples Bank were in collusion.

Plaintiffs make a point on the failure of the liquidating officers to proceed to foreclose until long after the notes were due. The delay was of no consequence if plaintiffs owed the notes.

On the issue of non-payment of the notes, it should be stated that in December, 1920, W. W. Seibert of the State Finance Department examined the Peoples Bank. He found it in bad condition. At a conference about December 28, 1920, Seibert, Cordia and Jones, cashier, considered the condition of the bank and Cordia's indebtedness to the bank. Jones there stated that if Cordia would secure his indebtedness he would take care of the other notes and overdrafts challenged by the examiner. Seibert had at the conference an itemized statement of Cordia's indebtedness as shown by the records of the bank. Cordia agreed to secure the indebtedness as listed in the statement. On the next day a written agreement was signed by Cordia and the Peoples Bank in which he acknowledged an indebtedness of $76,545.24 to the bank, as shown by the statement and records of the bank. In the agreement he promised to and did secure said indebtedness. The notes in suit were listed in the itemized statement and written agreement as an indebtedness of Cordia to the bank. Defendants introduced this agreement in evidence as an admission by Cordia that he owed the notes. Seibert testified that at the conference Cordia stated he did not owe that much money; that he (Seibert) replied that the records of the bank so showed and that amount would have to be secured. Cordia testified that he agreed to secure the indebtedness as listed, but stated that he did not owe the overdrafts listed amounting to $44,000. He further testified that he agreed to secure the indebtedness for the sole reason that he was told that if he did so the bank would be opened on the following Monday. He did not explain why he secured an indebtedness that he did not owe so that a bank in which he had no interest might be opened for business.

After the conference and before the bank was closed, Jones committed suicide. Frank Dietrich, deputy commissioner for liquidation, took charge of the assets, including the property transferred to the bank by Cordia to secure his indebtedness. Eugene C. Edgar, attorney for the directors, Frank Dietrich, liquidating officer, and E. L. Cook, successor to Dietrich, testified that during the course of liquidation and on numerous occasions they discussed with Cordia his indebtedness to the bank and that he on no occasion claimed that he did not owe the notes.

Moreover, Cordia signed another agreement in which he admitted he owed these notes. As stated, on January 4, 1921, he transferred

to the bank ties, notes, accounts and other personal property and conveyed to trustees certain land to pay and secure his indebtedness. Of course, the deputy commissioner proceeded to collect the notes and accounts and sell the personal property and apply the proceeds on the indebtedness. On June 7, 1921, the indebtedness had been reduced to $43,000. At that time Cordia and the Finance Commissioner signed an agreement in which it was agreed that if Cordia paid the balance of the indebtedness within sixty days the balance of the property would be returned to him. The agreement was written by Cordia's attorney and the Commissioner's attorney. It was presented to the circuit judge in Cordia's presence and confirmed by an order of the circuit court. The agreement contained a statement of the indebtedness at that time and included these notes. Cordia does not attempt to explain this admission that he owed the notes. Certainly, he did not sign that agreement on a representation that the bank would be opened. The only evidence tending to show payment of the notes is the uncorroborated testimony of Cordia. The facts and circumstances in evidence convince us that he had not paid them.

Plaintiffs next contend that Cordia paid a note and made a payment on another note, both of which should have been paid by the Peoples Bank, and that the amounts so paid should be "off-set against" the notes in suit.

The evidence showed that plaintiffs gave a note to the Peoples Bank. The bank endorsed the note with a guarantee of payment and sold it to the Bank of Farmington. A draft for the amount, less discount, was forwarded to the Peoples Bank and credited to Cordia's account.

The evidence also showed that Cordia gave another note to the Peoples Bank. The bank also endorsed it with a guarantee of payment to the Iron County Bank. A draft for the amount, less discount, was made payable to the cashier of the Peoples Bank and forwarded to him.

Thus it appears that Cordia received credit for the amount received from the Bank of Farmington. And the cashier of the Iron County Bank testified that Cordia in person arranged with the Iron County Bank to discount the note given by him to the Peoples Bank, and that the cashier of the Peoples Bank mailed the note to the Iron County Bank. There is no record evidence of the Peoples Bank tending to show who received the amount of this draft. The records of said bank were destroyed by fire on August 1, 1926. However, Cordia arranged for the loan, made payments on the note, and there is no evidence tending to show that Cordia claimed that this note was an indebtedness of the Peoples Bank until the institution of this suit. On the contrary he admitted in the agreement signed by him on January 4, 1921, that he owed both of these notes. We think the evidence conclusively showed that he owed this note.

1172

Plaintiffs next contend that Ed. Jacobs deposited $25,000 with the Peoples Bank at the request of Cordia and Jones, the cashier; that Jacobs required Cordia to guarantee in writing the safety of the deposit; that Cordia did so; that on the failure of the bank Cordia paid Jacobs the amount of said deposit, and for that reason an "off-set" should be allowed against the notes in suit.

It is not claimed that the Peoples Bank was a party to this alleged agreement. For this reason the contention should be overruled. Moreover, Jacobs testified that he knew of no such arrangement; that he had withdrawn all of the deposit except $9985.57 before the bank was closed; that he filed a claim with the Commissioner for said amount; that later he assigned the claim to Cordia, who filed a petition in the circuit court in which he alleged that he was the equitable owner of the money deposited in the Peoples Bank by Jacobs and prayed that this balance of $9985.57 be credited on his indebtedness to the bank. The petition was sustained and the amount allowed as a credit on Cordia's indebtedness. The records of the bank show that the credit was made as ordered and Cordia's indebtedness reduced by this amount.

In this connection plaintiffs direct attention to the testimony of Jacobs that he owed Cordia $13,000; that he gave him a check on the Peoples Bank in payment of said indebtedness; that he and Cordia knew the check would not be cashed, but that Cordia agreed to accept it in payment. They also direct attention to the other testimony and records of Cordia's transactions with the Peoples Bank and the Bank of Potosi. They do not attempt to connect these transactions with the issues involved in this case, and we are unable to do so.

The judgment is reversed and the cause remanded with directions to dismiss the petition. All concur.